**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PEDRO IMPERIAL VEGA, *Petitioner-Appellant*, <br><br> v. <br><br> CHARLES L. RYAN; CARSON McWILLIAMS, *Respondents-Appellees*. | No. 12-15631 <br><br> D.C. No. 4:09-cv-00473-CKJ <br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
September 12, 2013—San Francisco, California

Filed November 13, 2013

Before: Mary M. Schroeder and Jay S. Bybee, Circuit
Judges, and Ralph R. Beistline, Chief District Judge.[*]

Opinion by Judge Beistline

---

[*] The Honorable Ralph R. Beistline, United States District Judge for the District of Alaska, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel reversed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition based on ineffective assistance in counsel's failure to familiarize himself with the file and call witnesses who could provide exculpatory testimony.

After petitioner's conviction of contributing to the delinquency of a minor, child molestation, and sexual abuse, his trial lawyer learned that the victim had recanted her allegations to her priest. The panel held that counsel's failure to familiarize himself with petitioner's file led to a failure to present a key witness to the jury, and that a reasonable lawyer would not have made such an "inexplicable" decision. The panel also held that counsel's deficient performance was prejudicial, because the priest's testimony about the victim's recantation was not merely cumulative of her own testimony admitting the recantation to her mother, but could have tipped the scales in petitioner's favor.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Patricia A. Taylor (argued), Law Office of Patricia A. Taylor, Tucson, Arizona, for Petitioner-Appellant.

Thomas C. Horne, Attorney General, Kent Cattani, Division Chief Counsel, Joseph T. Maziarz, Section Chief Counsel, David A. Sullivan and Nicholas Klingerman (argued), Assistant Attorneys General, Tucson, Arizona, for Respondents-Appellees.

---

**OPINION**

BEISTLINE, Chief District Judge:

Petitioner, Pedro Imperial Vega, stands convicted of contributing to the delinquency of a minor, child molestation, and three counts of sexual abuse of his stepdaughter, based on events that occurred between 1996 and 1999. The Arizona state courts rejected Petitioner's direct and collateral challenges to his conviction. Petitioner then filed a federal habeas petition under 28 U.S.C. § 2254, arguing that he had received ineffective assistance of counsel. After an evidentiary hearing, the district court denied the petition. We reverse.

**FACTUAL AND PROCEDURAL HISTORY**

Between 1996 and 2002, Vega was represented by three different lawyers in connection with the underlying charges against him. The first lawyer represented him on federal charges, which were dismissed on jurisdictional grounds. The second lawyer represented him on state charges, which

the prosecutor ultimately chose not to pursue. State charges were brought for a third time following a new set of allegations by the victim, and yet a third lawyer represented Vega at trial. After two mistrials, one of which was caused by the third lawyer's absence, Vega was convicted in 2002. He was sentenced to twenty-eight years in prison.

After Vega's conviction, his trial lawyer learned that the victim had recanted her allegations to her priest ("Father Dan"). Counsel then filed a motion to vacate, and during an evidentiary hearing Father Dan's testimony was presented to the trial judge for the first time. Because Vega himself, as well as his two prior counsel were aware of the Father Dan recantation, the trial judge concluded that Father Dan's testimony was not "newly discovered evidence" pursuant to Ariz. R. Crim. P. 24.2(a)(2), and, therefore, the trial judge denied the motion to vacate.

On direct appeal, Vega argued that the trial court had erred by denying both his motion for judgment of acquittal and his motion for a new trial. The Arizona Court of Appeals denied Vega's direct appeal on the merits, finding that the recantation to the priest was not "newly discovered evidence," and that there was not a "reasonable probability" that the priest's testimony would have changed the outcome of the case. The Arizona Supreme Court summarily denied review.

Appellant then sought state post-conviction relief on the grounds of ineffective assistance of counsel. Following a two-day evidentiary hearing in 2008, the trial court denied post-conviction relief because Vega knew about the victim's recantation to Father Dan but had failed to tell his lawyer, and because the victim had admitted recanting her allegations to

her mother during her trial testimony. The trial judge found this admission rendered evidence of other recantations cumulative. The Arizona Court of Appeals granted review, but "[s]eeing no reason to repeat the trial court's analysis here," it adopted the trial court's decision and denied relief. The Arizona Supreme Court again summarily denied review.

Having exhausted all other possible remedies, Vega initiated the instant federal habeas proceedings, seeking relief pursuant to 28 U.S.C. § 2254. In a report and recommendation, a magistrate judge recommended denying the petition on the merits and dismissing it with prejudice. The district court agreed with the magistrate judge's report, noting specifically that "[i]n light of the victim's testimony [that she had recanted], the additional instances of recantations would have been 'largely cumulative in their basic effect.'" The district court then concluded that "given the reasons the Arizona courts stated for not granting relief, this Court does not find that the state courts' decision involved an unreasonable application of federal law." However, the district court granted a certificate of appealability on Vega's claim about trial counsel's investigation and presentation of evidence of the victim's recantations.

Vega claims that his trial counsel was ineffective for failing to familiarize himself with the file and, accordingly, failing to call witnesses[*] who could provide exculpatory testimony. He further claims that the state court

---

[*] Vega claimed that counsel failed to call several witnesses. Because we find counsel's failure to call Father Dan dispositive, we do not address Vega's other claims of error.

unreasonably applied clearly established federal law regarding ineffective assistance of counsel.  We agree.

## DISCUSSION

We review de novo the district court's denial of habeas relief.  *McMurtrey v. Ryan*, 539 F.3d 1112, 1118 (9th Cir. 2008).  Because Petitioner filed this petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 governs review of his claims.  *Estrella v. Ollison*, 668 F.3d 593, 597 (9th Cir. 2011).  AEDPA imposes a "highly deferential" standard of review and "demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  Review of ineffective assistance claims under § 2254(d)(1) is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).

> In evaluating the state's denial of habeas relief, we must decide whether, considering only the evidence before the state court, the determination that Petitioner received constitutionally sufficient assistance of counsel was "an unreasonable application of [ ] clearly established Federal law" or resulted from an "unreasonable determination of the facts."  28 U.S.C. § 2254(d).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ[**] if the state court identifies the correct governing legal principle from this Court's decisions but

---

[**] The original quote states "relief," not "the writ."

> unreasonably applies that principle to the facts
> of the prisoner's case."

*Cannedy v. Adams*, 706 F.3d 1148, 1157 (9th Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). *Cannedy* explains that a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 1158. Even if the state court arrived at what we think to be an incorrect result, that result must be upheld "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 1157 (citation omitted). Accordingly, "[i]f the state court reasonably concluded that Petitioner failed to establish either prong of the *Strickland* test, then we cannot grant relief." *Id.*

Here, the state courts correctly referenced *Strickland v. Washington*, 466 U.S. 668 (1984), but the courts' "adjudication of the claim . . . resulted in a decision that . . . involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). In *Strickland*, the Supreme Court articulated the two-prong test for determining whether counsel's assistance was so defective as to require reversal of a conviction: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687.

As to the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688. Here, the state courts rejected Vega's claim that counsel shirked his professional duty because "[i]t is illogical and unreasonable to hold [counsel] responsible for Petitioner's failure to divulge such

information [about the Father Dan recantation] to him." We disagree.

*Strickland* allows for a finding of ineffectiveness based on omissions, not just overt acts of counsel. *Id.* at 690. So, "[a] lawyer who fails adequately to investigate, and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999); *see also Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (finding ineffective assistance in a capital case where "[i]f the defense lawyers had looked in the file . . . they would have found a range of mitigation leads"). Additionally, while *Strickland* protects "strategic choices made after a thorough investigation of law and facts[,] . . . counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690–91. A decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. In this case, counsel did not know about the Father Dan recantation until a week-to-two weeks after the trial, so there cannot be a suggestion that counsel made a strategic decision not to call Father Dan. *Thomas v. Chappell*, 678 F.3d 1086, 1104–05 (9th Cir. 2012) (noting that trial counsel's failure to call a witness could not be excused as a tactical decision because counsel did not have sufficient information to make an informed decision).

Moreover, finding ineffective assistance of counsel in a case in which a petitioner alleged that he was falsely accused of abusing his step-daughter, we recently explained: "No competent lawyer would have declined to interview such a

potentially favorable witness when that witness had been clearly identified, the witness was easily accessible and willing to provide information, and trial counsel faced a dearth of defense witnesses." *Cannedy*, 706 F.3d at 1161. *See also Silva v. Woodford*, 279 F.3d 825, 833 (9th Cir. 2002) ("an attorney's failure to prepare for and challenge the testimony of a critical witness may be so unreasonable as to violate both prongs of the *Strickland* test."). We reach a similar conclusion: counsel's failure to familiarize himself with his client's file—despite this case's tortured history—led to a failure to present a key witness to the jury. A reasonable lawyer would not have made such an inexplicable decision. Accordingly, counsel's performance was deficient.

A defendant must also show that the deficient performance prejudiced him. *Strickland*, 466 U.S. at 687. Vega complains that counsel's failure to prepare and investigate his case, including his failure to read the files prepared by prior counsel, was a critical failure because the testimony of a priest who heard "what he believed to be a sincere recantation" could have tipped the scales in Vega's favor.

At trial, the victim's mother testified that her daughter had recanted to her, and counsel cross-examined the victim about her recantation to her mother, including whether she had dreamt the events and whether her allegations were false and motivated by a desire to manipulate her home environment. Because it was undisputed that the victim had recanted, the State argues (and the lower court found) that evidence of other recantations would have been cumulative. We disagree. Evidence of multiple recantations was not merely cumulative. It also could have impacted the victim's credibility, which the appellate court found "was a central

issue based on evidence of her recantation." Indeed, credibility was crucial to Vega's defense of actual innocence because the uncorroborated testimony of a victim is enough to sustain a conviction for child molestation. *State v. Munoz*, 561 P.2d 1238, 1241 (Ariz. App. 1976). Thus, the possibility of even one juror finding reasonable doubt in light of multiple recantations, or because one of those recantations was made to the victim's priest, was reasonably likely. Accordingly, "there is a reasonable probability that, but for trial counsel's deficient performance, the outcome of the trial would have been different." *Cannedy*, 706 F3d. at 1166.

We conclude that the state courts erred by determining that counsel's performance did not prejudice Vega. Under these circumstances, counsel's failure to read Vega's client file is not excused by the failure of the client to inform counsel of what was in the file. *See Johnson v. Baldwin*, 114 F.3d 835, 838–40 (9th Cir. 1997) ("The prejudice from failing to investigate . . . and confer more fully with [petitioner] is not avoided by the fact that [petitioner] misinformed his attorney."). And counsel's abdication of his duty to investigate, particularly given the case's long history of failed prosecutions, is deficient performance under *Strickland*. In this case, the deficient performance was also prejudicial because the recantations were not merely cumulative, and proper disclosure to the jury could have tipped the scales in Vega's favor. The State's suggestion to the contrary is simply not persuasive. Petitioner's claim therefore meets the *Strickland* standard for ineffective assistance of counsel, and his petition for relief must be granted.

**REVERSED AND REMANDED.**