NGUYEN, Circuit Judge,
dissenting:
Crooked Arm’s and Shane’s felony sentences violate Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the conspiracy object to which they admitted — selling migratory bird feathers — was only a misdemeanor. Yet the majority refuses to reach the merits of Defendants’ sentencing argument because a prior panel purportedly “affirmed their felony convictions.” Majority Op. at 1067. The majority’s flawed reasoning is as follows: the prior panel, by not vacating the convictions, implicitly ruled that Defendants should be sentenced as felons on remand. But the panel made no such ruling, which would have required a finding that Defendants admitted to one of the felony objects — rather than the misdemeanor objects — alleged in Count I’s mul-ti-object conspiracy. Instead, the panel held that Count I charged a felony in part, that Defendants admitted only to a conspiracy to sell feathers, that the sale of feathers was a misdemeanor, and that Defendants’ felony sentences must be vacated. United States v. Vance Crooked Arm (Crooked Arm I), 788 F.3d 1065, 1070 n.2, 1071-72, 1079 (9th Cir. 2015) (per curiam).
Because Defendants’ sentences violate Apprendi, and because the law of the case does not prevent us from correcting this error (indeed, Supreme Court and our own precedent require us to fix it), I respectfully dissent.
I
The majority relies solely on a procedural ground not advanced by the government to deny relief, and it is therefore important at the outset to understand the unusual posture of this ease.
The parties do not dispute that, during the plea colloquies, Crooked Arm and Shane admitted only to a misdemeanor object: a conspiracy to “sell parts of birds,” namely, migratory bird feathers.[1] The district court nevertheless initially sentenced them as felons based on the mistaken belief that selling parts of birds is a felony. No one addressed whether a felony sentence could be supported on other grounds because the district court and the parties believed — mistakenly—that the only object of the conspiracy alleged in Count I was to “sell the various parts of the *1071 birds.”[2] While the district court and the parties all understood Count I as alleging only a conspiracy to sell bird parts, they disagreed as to whether doing so was. a misdemeanor (as Crooked Arm and Shane argued) or a felony (as the government and the district court believed).
On appeal, the panel in Crooked Arm, I agreed with Defendants that, unlike the sale of whole birds, the sale of bird parts was only a misdemeanor. 788 F.3d at 1079. The panel nevertheless affirmed the district court’s denial of the motion to dismiss because “Count I clearly charges in part a statutory felony,” namely, a conspiracy to offer for sale and sell birds. Id. at 1071-72 (emphasis added).
This holding in Crooked Arm, I is consistent with the plain language of the statute, which shows that only two of the four alleged objects of the conspiracy in Count I — offering for sale and selling migratory birds — qualify as felonies. The other two objects — killing and transporting migratory birds — are misdemeanors.[3] Indeed, the government conceded this point at oral argument, as did the district court below when denying the motion to dismiss. This distinction matters because, if Crooked Arm and Shane admitted only to misdemeanor objects, then the conspiracy to which they pled is itself only a misdemean- or. See 18 U.S.C. § 371; Crooked Arm I, 788 F.3d at 1071.
In supplemental briefing requested by the panel in Crooked Arm I, Defendants advanced several arguments, including that Apprendi required them to be sentenced as misdemeanants for Count I because “the object of the conspiracy to which the Defendants pled guilty (selling feathers) is a misdemeanor.” Defendants therefore requested that the panel “remand for re-sentencing rather than dismissing” Count I. The panel obliged by vacating their sentences and remanding. Id. at 1080.
II
A
The linchpin of the majority’s opinion is that, under the law of the case doctrine, we must decline to hear Crooked Arm’s and Shane’s sentencing challenge. I disagree. Because the prior panel “did not decide” whether Crooked Arm’s and Shane’s felony sentences were Apprendi error, the “law of the case doctrine does not preclude us from deciding that issue here.” United States v. Almazan-Becerra, 537 F.3d 1094, 1097 (9th Cir. 2008) (holding that the law of the case doctrine did not bar consideration on remand of sentencing argument because the prior panel, despite address *1072 ing the issue, did not decide it); see Wyler Summit P’ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1193 (9th Cir. 2000).
Crooked Arm and Shane are not, as the majority characterizes it, improperly attempting to “relitigate the adequacy of their pleas by resurrecting them in the guise of a sentencing claim.” Majority Op. at 1069. To the contrary, they are not challenging their convictions under Count I; they do not argue that their “pleas were not knowing and voluntary and without adequate factual basis,” two issues addressed in a footnote in Crooked Arm I, 788 F.3d at 1072 n. 5. Instead, Crooked Arm and Shane concede the propriety of their convictions on Count I, but challenge only the sentences they received on remand. The majority conflates a challenge to a sentence with a challenge to a conviction — two different legal theories with different remedies based on different facts— so as to shoehorn this appeal into a theory rejected in Crooked Arm I.[4]
Contrary to the majority’s suggestion, the panel in Crooked Arm I never “rejected” the Apprendi argument included in Defendants’ supplemental briefing; the panel simply did not discuss the argument or even mention Apprendi. Majority Op. at 1069. Nor was it required to do so, as it granted Defendants the relief they sought: the panel held that Count I charged a felony only in part, that Defendants admitted only to a conspiracy to sell bird parts, that the sale of bird parts was a misdemeanor, and that Defendants’ felony sentences must be vacated. Crooked Arm I, 788 F.3d at 1070 n.2, 1071-72, 1079. These holdings — which are law of the case — laid the necessary groundwork for Defendants to receive misdemeanor sentences on remand.
Having vacated the sentences, the panel in Crooked Arm I did not reach the issue of whether Defendants were properly sentenced for a felony. The passages cited by the majority describing Count I as charging a felony only underscore the limits of Crooked Arm Ts holding, namely, that the district court properly denied the motion to dismiss as to Count I. But a determination that Count I charged a felony says nothing about whether Defendants were properly sentenced as felons because, as the government conceded and the district court held, Count I also charged a misdemeanor. Under such circumstances, to determine that a felony sentence was proper under Apprendi would have required the panel to hold that Crooked Arm and Shane admitted to a felony object. See United States v. Guerrero-Jasso, 752 F.3d 1186, 1189-91 (9th Cir. 2014). The panel never did so. Because CrookedArm 7’s analysis “neither acknowledged nor discussed” the Apprendi argument and, in fact, granted Defendants the relief they requested, the law of the case doctrine does not apply here. Hegler v. Borg, 50 F.3d 1472, 1475 (9th Cir. 1995).
B
Even if Crooked Arm Ps silence on the issue could be read as a rejection of Defendants’ Apprendi argument (which it cannot), the law of the case doctrine does not bar relief here because the prior panel “wiped the slate clean” by vacating the original sentences and remanding for re-sentencing. Pepper v. United States, 562 U.S. 476, 507, 131 S.Ct. 1229, 179 L.Ed.2d *1073 196 (2011). This is true even if Crooked Arm I vacated their sentences on different grounds than those raised by Defendants on remand. Id. at 507-08, 131 S.Ct. 1229 (holding that the district court “was not bound by the law of the case doctrine” to rule the same way as in prior sentencing because the court of appeals had vacated the sentence, albeit on different grounds).[5]
“On remand, the district court generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo.” United States v. Matthews, 278 F.3d 880, 885-86 (9th Cir. 2002) (en banc). The present case underscores the policy reasons behind the rule generally permitting defendants to raise all available sentencing arguments on remand: doing so provides the “predictability and consistency in sentencing” necessary for a “just sentence.” Matthews, 278 F.3d at 886 (quoting United States v. Matthews, 240 F.3d 806, 823 (9th Cir. 2000) (O’Scannlain, J., dissenting)). In the first sentencing hearing, the district court sentenced Crooked Arm and Shane based on the mistaken belief that Count I alleged only a conspiracy to “sell the various parts of the birds” and that doing so was a felony, a legal conclusion that we reversed in Crooked Arm I. As the district court-noted on remand, “nobody contemplated” that the Ninth Circuit would hold that Count I charged a felony in part. Rather, the district court and the parties expected either a total affirmance or total reversal. Thus, in their first sentencing hearing, Crooked Arm and Shane had no reason to challenge an Apprendi error that had yet to occur and which depended on a future partial reversal that nobody expected.
The majority’s only answer is that Defendants’ Apprendi argument is not an Apprendi argument but rather a challenge to the “adequacy of the pleas,” an argument rejected in Crooked Arm I. Majority Op. at 1069. Respectfully, this reasoning substitutes a strawman argument for the one Defendants actually make. Crooked Arm and Shane clearly state that their “pleas were adequate to convict them” on Count I because they admitted a misdemeanor object of the conspiracy: the sale of bird feathers. They simply challenge their sentences because they pled to a misdemeanor conspiracy, but were sentenced as felons — a quintessential Appren-di error.
C
Furthermore, we do not apply the law of the case doctrine when doing so would be “clearly erroneous” and would result in “a manifest injustice.” Pepper, 562 U.S. at 506-07, 131 S.Ct. 1229. Such is the case here. Closing our eyes to a clear Apprendi error is a manifest injustice because, unlike a misdemeanant, a felon must “carry through life the disability of a felon[y] and by reason of that fact he might lose certain civil rights,” such as the right to vote, serve on a jury, or hold political office. See Fiswick v. United States, 329 U.S. 211, 222 & n.10, 67 S.Ct. 224, 91 L.Ed. 196 (1946); United States v. Chovan, 735 F.3d 1127, 1145 (9th Cir. 2013) (Bea, J., dissenting) *1074 (unlike misdemeanants, “felons can suffer numerous restrictions on their constitutional rights”).
D
Defendants also could not have waived in Crooked Arm I a challenge to a sentencing error that had not yet occurred. In United States v. Caterino, we affirmed Caterino’s convictions in his first appeal and held that he had “waived” his double jeopardy sentencing argument by acquiescing below. 29 F.3d 1390, 1393, 1395 (9th Cir. 1994) overruled on other grounds by Witte v. United States, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). However, we identified a different error and remanded for resentencing. Id. at 1393. On remand, the district court rejected Caterino’s attempt to raise his double jeopardy argument, finding that the argument was barred by the law of the case doctrine. Id. at 1395. We reversed again, holding that the defendant was “free to make any new arguments or concessions he deemed appropriate given the new set of circumstances” of a vacated sentence and remand for resentencing. Id. at 1396. We explained that, after an appellate court vacates a sentence and remands for resen-tencing, a defendant is not “bound at the resentencing phase by his [earlier] waiver.” Id. at 1396; see also United States v. Garcia-Guizar, 234 F.3d 483, 490 (9th Cir. 2000) (rejecting the argument that the government “waived its right to correct [on remand] the error in the original sentencing because it did not cross-appeal from the original sentence”).
E
The majority faults Crooked Arm and Shane for not withdrawing their pleas on remand, stating that they “should have tried” to do so if they “did not want to be sentenced as felons.” Majority Op. at 1070. But the district court’s offer to withdraw their pleas came with a warning that doing so would erase their victory on appeal, because the government would be permitted to recharge them as felons. A district court cannot immunize itself from Appren-di error simply by offering a defendant the Hobson’s choice between an unconstitutional sentence and withdrawal of his plea. That dubious proposition appears nowhere in the case cited by the majority, which rejected a collateral attack on a conviction because “a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked” absent certain exceptions. United States v. Broce, 488 U.S. 563, 574, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (quoting Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)). That case has nothing to do with the Apprendi error that arose here.
Ill
While not addressed by the majority, the district court committed Apprendi error by sentencing Defendants as. felons because the government failed to secure an admission of any felony object of the conspiracy.
Under Apprendi and its progeny, a sentencing court may not increase the penalty for a crime beyond the statutory maximum by relying on facts, other than the fact of a prior conviction, “that were neither admitted by the [defendant nor found by a jury beyond a reasonable doubt.” Guerrero-Jasso, 752 F.3d at 1189. Error occurs even if the court sentences a defendant to less than the maximum penalty provided by statute because the term “ ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or. admitted by the defendant.” Blakely v. Washington, 542 U.S. *1075 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
The government bears the burden “at the plea colloquy to seek an explicit admission of any unlawful conduct it seeks to attribute to the defendant.” United States v. Hunt, 656 F.3d 906, 912 (9th Cir. 2011) (quoting United States v. Thomas, 355 F.3d 1191, 1199 (9th Cir. 2004)). Therefore, in order to obtain felony sentences here, the government must have elicited from Crooked Arm and Shane explicit admissions to a felony object of the conspiracy: offering for sale or selling migratory birds (not merely bird feathers). The government failed to do so. In fact, during his plea colloquy, Shane specifically rejected the government’s offer of ppoof as “wrong and misleading,” admitting only to helping Crooked Arm sell his daughter’s fan made of migratory bird feathers. Crooked Arm also admitted only to selling feathers and leaving a deer carcass out for birds to eat. But neither admitted to conspiring to sell or offer for sale migratory birds.
The government falls back on the argument that Crooked Arm and Shane pled guilty to a felony because the indictment alleges a multi-object conspiracy that includes both misdemeanor and felony objects. That is not the law. Where, as here, a defendant pleads guilty to a count alleging conduct in the conjunctive, the defendant admits only the least serious conduct. See Guerrero-Jasso, 752 F.3d at 1191 (vacating a sentence based on a guilty plea to a charge alleged in the conjunctive because when “either ‘A’ or ‘B’ could support a conviction, a defendant who pleads guilty to a charging document alleging ‘A and B’ admits only ‘A’ or ‘B’ ” (quoting Young v. Holder, 697 F.3d 976, 988 (9th Cir. 2012) (en banc))). That is because, by pleading guilty to the charging document, a defendant only “admits the facts constituting the elements of the charge,” but not allegations that are “not necessary” for a conviction. United States v. Cazares, 121 F.3d 1241, 1246-47 (9th Cir. 1997) (vacating sentence based on a guilty' plea to an indictment charging a drug conspiracy and alleging that the defendant possessed a gun because gun possession was not an element of the drug conspiracy charge).
Here, all that was necessary for a conviction under Count I was an admission to any one of the four alleged objects of the conspiracy, including the misdemeanor objects of killing and transporting birds. See Griffin v. United States, 502 U.S. 46, 56-57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (affirming a conviction on a multi-object conspiracy charge under 18 U.S.C. § 371 where the evidence implicated the defendant as to only one of the two objects of the conspiracy). Because the government failed to secure an admission from Crooked Arm and Shane of any felony object of the conspiracy, they pled only to a misdemeanor. As a result, the district court erred in sentencing them as felons. See Guerrero-Jasso, 752 F.3d at 1191.
[[Image here]]
Because the district court committed Apprendi error, I would vacate the sentences and remand with instructions to resentence Crooked Arm and Shane' as misdemeanants.

. The majority confusingly focuses on Crooked Arm’s admission to an alleged overt act: placing deer carcasses on the land. Majority Op. at 1068.& n.3. But, as Crooked Arm and Shane explain, this overt act — which itself is not a felony — does not convert a misdemeanor conspiracy into a felony. See Iannelli v. United States, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). Whether the conspiracy is a misdemeanor or a felony turns not on this overt act, but rather on the “object of the conspiracy” admitted by Defendants, which was the sale of feathers. Crooked Arm I, 788 F.3d at 1070 n.2, 1071; 18 U.S.C. § 371.

. At the plea colloquy, the district court told Shane that what the indictment is "saying in Count One is that you conspired with Mr. Crooked Arm ... to sell the various parts of the birds.” No party disagreed with this characterization. That is because the government had already conceded, and Defendants agreed, that the “indictment here charges defendant with selling and offering to sell bird parts.” The government and the district court simply took the position that the indictment’s use of the statutory term "migratory bird” included "parts of birds.” As Crooked Arm I held, that conflation of birds with bird parts was error. 788 F.3d at 1075.

. Under the Migratory Bird Treaty Act, it is a felony to "sell” or "offer for sale ... any migratory bird.” 16 U.S.C. § 707(b)(2). Absent intent to sell, the Act makes it a misdemeanor to "kill” or "transport” a migratory bird. See id. §§ 703(a), 707(a). Consistent with Crooked Arm I, our sister circuits have also recognized that killing migratory birds is only a "misdemeanor” under 16 U.S.C. § 707(a). See United States v. Apollo Energies, Inc., 611 F.3d 679, 681 (10th Cir. 2010); United States v. CITGO Petroleum Corp., 801 F.3d 477, 488 (5th Cir. 2015).

. We routinely recognize the distinction between a challenge to a conviction and a challenge to a sentence by affirming convictions but vacating sentences due to Apprendi error. See, e.g., United States v. Locklin, 530 F.3d 908, 911-13 (9th Cir. 2008). Therefore, contrary to the majority's suggestion, it would not be absurd to affirm Defendants' convictions but also hold that their felony sentences were improper.

. The two cases relied upon by the majority do not hold otherwise. Those cases do not involve an appeal from a remand for resen-tencing, nor do they address the binding authorities discussed herein. See United States v. Alexander, 106 F.3d 874, 875 (9th Cir. 1997) (holding that the "district court abused its discretion by departing from the law of the case and admitting a previously suppressed confession"); Mendez-Gutierrez v. Gonzales, 444 F.3d 1168, 1173 (9th Cir. 2006) (holding that the Board of Immigration Appeals- was bound by the first appeal’s "limited remand” to consider only "whether [the petitioner] has established a prima facie case of eligibility for asylum”).